UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TATYANA PERRONE and TIMEEKAH MEEKS,<br><br>　　　　　　　Plaintiffs,<br>　v.<br><br>BIBI METABOLIC AND BARIATRIC SERVICES, LLC d/b/a WEIGHT LOSS AND WELLNESS CENTER, SANIEA MAJID, ALI AHMAD, JOHN DOES 1 through 10, and ABC CO. 1 through 10.<br><br>　　　　　　　Defendants. | Civil Action No. 2:20-cv-10587-MCA-LDW<br><br>**FIRST AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, by and through their undersigned counsel, The Law Offices of Thomas H. Andrykovitz, P.C. and Law Offices of Joshua F. McMahon, LLC, respectfully allege as follows:

**JURISDICTION AND VENUE**

1. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). This Court has supplemental jurisdiction over the New Jersey state law claims under the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a, *et seq.* ("NJWHL") and the Conscientious Employee Protection Act, N.J.S.A. 34:19-1, *et seq.* ("CEPA"), as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2. Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

3. All Defendants are hereinafter collectively referred to as "Defendants."

4. At all relevant times to this action, Defendants were employers within the meaning of the FLSA and NJWHL.

### The Corporate Defendants

5. Defendant BIBI METABOLIC AND BARIATRIC SERVICES LLC ("Bibi LLC") is a New Jersey limited liability corporation that operates a medical office called Weight Loss and Wellness Center, with locations at 6 Brighton Road, Suite 106, Clifton, New Jersey; 183 US-206, Roxbury, New Jersey; 65 East Northfield Road, Unit K, Livingston, New Jersey; 2005 St. George Avenue, Rahway, New Jersey; and 5 Molino Drive, Chatham, New Jersey.

6. Upon information and belief, Bibi LLC at all relevant times is a business engaged in interstate commerce and has gross sales in excess of $500,000 per year.

7. Upon information and belief, Defendant Bibi LLC purchased, and handled goods moved in interstate commerce.

8. Defendants ABC Co. 1 through 10 are fictitious entities, the identities of which are unknown at present, but that are liable to Plaintiff by reason of their knowing and joint participation in the conduct that damaged Plaintiff, the FLSA Collective Plaintiffs, and the Class, pursuant to the doctrine of *respondeat superior*, or that are otherwise responsible to Plaintiff for the wrongful conduct referred to herein.

9. At all relevant times, Defendant Bibi LLC and Defendants ABC Co. 1 through 10 (collectively the "Corporate Defendants") were, and continue to be, each an enterprise engaged in commerce within the meaning of the FLSA.

<u>Owner/Operator Defendants</u>

10. Defendant SANIEA MAJID ("Majid") is an owner, and the registered agent, of Defendant Bibi LLC.

11. Upon information and belief, Defendant Majid is a resident of the State of New Jersey.

12. Defendant Majid is actively involved in managing Defendant Bibi LLC and the medical office it operates.

13. Defendant Majid has authority over the Corporate Defendants' employees' rates of pay, schedules, hiring and firing, and maintenance of employment records.

14. Defendant Majid exercises sufficient control over the Corporate Defendants' day-to-day operations to be considered an employer of Plaintiff under the FLSA, the New Jersey Wage and Hour Law, and the regulations thereunder.

15. Defendant ALI AHMAD is an owner of Defendant Bibi LLC.

16. Upon information and belief, Defendant Ahmad is a resident of the State of New Jersey.

17. Defendant Ahmad is actively involved in managing Defendant Bibi LLC and the medical office it operates.

18. Defendant Ahmad has authority over the Corporate Defendants' employees' rates of pay, schedules, hiring and firing, and maintenance of employment records.

19. Defendant Ahmad exercises sufficient control over the Corporate Defendants' day-to-day operations to be considered an employer of Plaintiff under the FLSA, the New Jersey Wage and Hour Law, and the regulations thereunder.

20. Defendants John Does 1 through 10 are fictitiously named defendants, the identities of which are unknown at present, but who are liable to Plaintiff by reason of their knowing and joint participation in the conduct that damaged Plaintiff, and who aided and abetted, ratified, authorized, acquiesced in, approved or condoned the misconduct complained of in this complaint, and specifically, includes all individuals who participated in the illegal conduct referred to herein and/or who engaged in intentional and/or reckless extreme and outrageous conduct, which caused Plaintiff harm.

21. Defendant Majid, Defendant Ahmed, and Defendants John Does 1 through 10 (collectively "individual Defendants") are jointly and severally liable with the Corporate Defendants.

## Plaintiffs

22. Plaintiff TATYANA PERRONE ("Perrone") is an adult resident of the State of New Jersey.

23. Plaintiff Perrone was employed by Defendants from June of 2019 through March of 2020.

24. Plaintiff TIMEEKAH MEEKS ("Meeks") is an adult resident of the State of New Jersey.

25. Plaintiff Meeks was employed by Defendants from April of 2018 through March of 2020.

## FACTS

26. Defendants committed the following acts knowingly, intentionally, and willfully.

27. Defendants knew that the nonpayment of overtime pay would financially injure Plaintiffs and violate state and federal law.

28. From June of 2019 through March of 2020, Plaintiff Perrone was employed as a "Practice Manager" in Defendants' medical office located at Chatham, New Jersey.

29. Defendants paid Plaintiff Perrone a weekly salary instead of an hourly wage.

30. Throughout her employment, Plaintiff Perrone was not exempt from overtime under state and federal law.

31. Plaintiff Perrone did not have authority to sign checks.

32. Plaintiff Perrone did not have authority to create work schedules for herself, or the rest of Defendants' employees.

33. Plaintiff Perrone did not have authority to hire or fire on Defendants' behalf.

34. Plaintiff Perrone's job duties included answering phones, working as a receptionist, scheduling patients, medical billing, and marketing.

35. Defendants did not permit Plaintiff Perrone to exercise her own discretion and independent judgement because Defendant Majid micromanaged the office. For example, Defendant Majid controlled the hiring process as well as the scheduling for all employees.

36. Defendant Ahmed usually worked with Defendant Majid in the office during the evening.

37. Defendant Ahmed posted jobs for the office on Indeed.com.

38. Defendant Ahmed interviewed prospective employees over the telephone.

39. Defendant Ahmed purchased equipment on behalf of the office.

40. Plaintiff Perrone usually worked five (5) days per week.

41. Plaintiff Perrone usually worked between fifty (50) and sixty (60) hours per week.

42. Defendants required Plaintiff Perrone to begin her workday at 8:30 a.m. and required Plaintiff to continue working until Defendant Majid finished her workday, which was usually around 8:00 p.m., Monday through Friday.

43. Plaintiff Perrone occasionally worked on weekends, per Defendant Majid's orders, to attend Defendants' marketing events as well as work on office billing.

44. Plaintiff Perrone was not provided time for lunch. Instead, Plaintiff Perrone ate lunch at her desk while she worked. This was true for all employees. No employees were ever provided a break.

45. Plaintiff Perrone was allowed two (2) weeks for vacation, paid time off, and sick days.

46. Throughout her employment, Plaintiff Perrone was paid for forty (40) hours of work each week, regardless of the number of hours she worked.

47. Defendants did not pay Plaintiff Perrone for all the hours that she worked.

48. Plaintiff Perrone's paystubs do not list the number of hours that Plaintiff Perrone worked.

49. Defendants never paid Plaintiff Perrone for her overtime, which should have been calculated at one and one-half (1.5) times Plaintiff Perrone's regular hourly wage.

50. Upon information and belief, Defendants failed to keep full and accurate records of Plaintiff Perrone's hours and wages.

51. Plaintiff Perrone was sick and unable to work in the office from March 16 through March 20, 2020.

52. Plaintiff Perrone worked from home from March 23 through March 27, 2020.

53. On March 20, 2020, Defendant Ahmed directed Plaintiff Perrone to a location that offered a 6-hour COVID-19 test, told Plaintiff that she just had a cold or flu, and issued Plaintiff a prescription for Augmentin without examining her.

54. On March 31, 2020, Plaintiff Perrone provided Defendant Majid with her COVID-19 test results and Defendant Majid advised Plaintiff Perrone to file for unemployment and only work one (1) day the following week.

55. On or about April 3, 2020, Defendant Majid revoked Plaintiff Perrone's office laptop in retaliation for a call from the Health Department, whereupon Defendant Majid essentially accused Plaintiff Perrone of reporting her office to the Health Department. Instead, another employee advised Defendant Majid that she (not Plaintiff) had called the Health Department. Nevertheless, Defendant Majid advised Plaintiff Perrone to now apply for full unemployment and revoked her ability to work even one (1) day per week.

56. Plaintiff Meeks was employed by Defendants as a Medical Assistant.

57. Throughout her employment, Plaintiff Meeks was not exempt from overtime under state and federal law.

58. Plaintiff Meeks usually worked five (5) days per week.

59. Plaintiff Meeks was required to work the second Saturday of every month.

60. Plaintiff Meeks' job duties included answering phones, patient intake, checking patient vitals, and taking patient appointments.

61. Defendants paid Plaintiff Meeks an hourly wage of between $13.50 and $16.00.

62. Plaintiff Meeks usually worked between forty-five (45) and fifty (50) hours per week.

63. Defendants did not pay Plaintiff Meeks for all the hours that she worked.

64. Plaintiff Meeks' paystubs do not list the number of hours that Plaintiff Meeks worked.

65. Defendants never paid Plaintiff Meeks for her overtime, which should have been calculated at one and one-half (1.5) times Plaintiff Meeks' regular hourly wage.

66. Defendant Majid directed Plaintiff Meeks to submit weekly timesheets.

67. Defendant Majid required Plaintiff Meeks to only write forty (40) hours per week on her timesheets even though Plaintiff Meeks worked more than forty (40) hours per week.

68. Plaintiff Meeks was not provided time for lunch while she worked.

69. Defendant Ahmad occasionally directed Plaintiff Meeks to make copies for him.

70. Defendant Majid required Plaintiff Meeks, and other employees, to come to work after she found out that Plaintiff Perrone tested positive for COVID-19.

71. Plaintiff Meeks believed that is was a violation of the law for Defendants to keep the office open, require the employees to come to work, and continue to see patients in the office.

72. Plaintiff Meeks was also concerned for herself because she did not believe the office was large enough for everyone to adequately social distance.

73. On or about April 2, 2020 Plaintiff Meeks contacted the Health Department in Livingston, New Jersey for guidance on whether it was safe for Defendants' office to remain open and for Defendant Majid to see patients after Plaintiff Perrone tested positive for COVID-19.

74. The Health Department collected data on Plaintiff Meeks, her employment, and Defendants' medical office.

75. Defendant Majid told Plaintiff Meeks not to come to work after Defendant Majid was contacted by the Health Department.

76. On or about April 7, 2020, Defendant Majid terminated Plaintiff Meeks when Defendant Majid told Plaintiff Meeks to file for unemployment.

## COUNT 1
### (FLSA Overtime Violations, 29 U.S.C. §§ 201, *et seq.*)
### (All Plaintiffs Against All Defendants)

77. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

78. The FLSA provides that no employer engaged in commerce shall employ a covered employee for a workweek longer than forty (40) hours unless such employee received compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater.

79. Throughout the statute of limitations period covered by these claims, Plaintiffs occasionally worked more than forty (40) hours per workweek.

80. At all relevant times, Defendants had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay Plaintiffs at one and one-half times their hourly wage for work in excess of forty (40) hours per workweek and willfully failing to keep records required by the FLSA and relevant regulations even though Plaintiffs were entitled to overtime.

81. Defendants' unlawful conduct was willful within the meaning of the FLSA, 29 U.S.C. § 255(a), therefore a three-year statute of limitations applies.

82. Plaintiffs seeks damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT 2
### (New Jersey Overtime Violations, N.J.S.A. 34:11-56 *et seq.*)
### (All Plaintiffs Against All Defendants)

83. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

84. It is a violation of New Jersey law for an employer to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of forty (40) hours in any workweek.

85. Defendants willfully, regularly and repeatedly failed to pay Plaintiffs the required overtime rate of one-and-one-half times their hourly rate for hours worked in excess of forty (40) hours per workweek.

86. Defendants withheld and diverted wages owed to Plaintiffs for work performed in excess of forty (40) hours per week.

87. As a result of Defendants' willful unlawful conduct, Plaintiffs are entitled to damages in an amount to be determined at trial, liquidated (treble) damages, attorneys' fees, costs, pre-judgment interest, post-judgment interest, all other damages available under New Jersey law, and such other legal and equitable relief as this Court deems just and proper.

## COUNT 3
### (Violation of Conscientious Employee Protection Act, *N.J.S.A* 34:19-1)
### (Plaintiff Meeks Against All Defendants)

88. Plaintiff Meeks realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

89. Plaintiff engaged in "whistle-blowing" activities in that she disclosed and objected to Defendants' conduct which she reasonably believed was in violation of law and/or public policy, and/or rules or regulations promulgated pursuant to law and/or public policy

90. Defendants terminated Plaintiff Meeks in retaliation for the whistle-blowing activities described herein.

91. Defendants' adverse employment actions against Plaintiff Meeks were without any legitimate and/or lawful purpose.

92. The purported rationale for the adverse employment action taken against Plaintiff Meeks was pre-textual and was advanced in order to mask Defendants' retaliatory intent and conspiratorial schemes, which included, amongst other public health violations.

93. Defendants' retaliatory action against Plaintiff Meeks constitutes a violation of CEPA.

94. As a result, Plaintiff Meeks' statutory rights have been violated and her protections under the law have been eviscerated.

95. Plaintiff has suffered damages resulting in the loss of compensation and benefits, loss of earning power, the loss of opportunities for prospective employment, the loss of fringe benefits, and the incurring legal expenses and other expenses as a result of Defendants' actions.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request the following relief:

A. An award of damages, according to proof, inclusive of lost wages, overtime, back pay, liquidated damages under the FLSA, and treble damages under the NJWHL, to be paid by Defendants;

B. An award of punitive damages on the CEPA claim,

C. Penalties available under applicable laws, inclusive of civil penalties under New Jersey Law;

D. Costs of action incurred herein, including expert fees;

  E. Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, New Jersey law, and other applicable statutes;

  F. Pre-judgment and post-judgment interest, as provided by law;

  G. Such other and further legal and equitable relief as this Court deems necessary just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

Dated: New York, NY
September 23, 2020

      Respectfully submitted,

      **THE LAW OFFICES OF**
      **THOMAS H. ANDRYKOVITZ, P.C.**

        /s/ Thomas Andrykovitz
      By: _____
      Thomas H. Andrykovitz, Esq.
      260 Madison Avenue, 15th Floor
      New York, NY 10017
      T: 212-983-8999
      *Attorney for Plaintiffs*

      **THE LAW OFFICES OF**
      **JOSHUA F. McMAHON, LLC**

        /s/ Joshua McMahon
      By: _____
      Joshua F. McMahon, Esq.
      123 South Avenue East
      Westfield, New Jersey 07090
      T: 908-233-4840
      *Attorney for Plaintiffs*